**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KEITH SMITH,**<br>                    **Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **WIRECO WORLDGROUP, WIRECO<br>WORLDGROUP, INC., CORPORATION<br>DOE (1-3), and JOHN DOE (1-3),**<br>                    **Defendants.** | **NO.  25-4833** |

**<u>MEMORANDUM</u>**

**HODGE, J.**                                                              **May 1, 2026**

Keith Smith ("Plaintiff") has filed this case against WireCo WorldGroup, WireCo WorldGroup, Inc. (collectively, "WireCo"), Corporation Doe (1-3), and John Doe (1-3) for Wrongful Termination in Violation of Public Policy (Count I); Breach of Contract (Count II); and Tortious Interference with Prospective Advantage (Count III). (*See generally* ECF No. 1-1 at 2–11 ("Compl.").) WireCo filed a Motion to Dismiss Count III only of the Complaint (the "Motion"). (ECF No. 9-1.) Plaintiff opposes the Motion. (ECF No. 10.) For the reasons that follow, the Court grants the Motion.

**I.      BACKGROUND**

**A.      Factual Background**[1]

Taking the allegations in the Complaint as true, the relevant facts are as follows. Plaintiff was employed by WireCo for approximately one year before his termination. (Compl. ¶ 8.) On April 14, 2023, Plaintiff suffered a laceration to his index finger while working. (*Id.* ¶ 9.) Plaintiff was immediately taken for emergency medical treatment. (*Id.* ¶ 10.) Following subsequent

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

specialized medical treatment, a physician informed Plaintiff that he would only regain approximately seventy percent of the feeling in his injured finger. (*Id.* ¶ 11.) As part of WireCo's policies and procedures concerning compensation for workplace injuries, Plaintiff was required to undergo a drug screening. (*Id.* ¶ 12.) On April 17, 2023, Plaintiff completed the drug screening, which he alleges was three days before the required deadline to complete the screening. (*Id.* ¶¶ 13–14.) On April 26, 2023, WireCo terminated Plaintiff. (*Id.* ¶ 17.)

Plaintiff filed a workers' compensation claim with Liberty Mutual. (*Id.* ¶ 15.) Liberty Mutual temporarily accepted the claim and began paying benefits to Plaintiff. (*Id.* ¶ 16.) On July 7, 2023, Liberty Mutual revoked the acceptance of Plaintiff's workers' compensation claim citing Plaintiff's non-compliance with medical treatment and WireCo's post-accident procedures. (*Id.* ¶ 20.) Plaintiff alleges WireCo falsely represented his compliance with the procedures, namely that Plaintiff did not timely complete the drug screening. (*Id.* ¶¶ 21, 45.) Plaintiff further alleges that WireCo did so to get his workers' compensation benefits revoked. (*Id.* ¶¶ 21, 46.) Plaintiff also alleges that he has been unable to work and earn wages since April 14, 2023. (*Id.* ¶ 22.)

WireCo refutes Plaintiff's tortious interference claim on the ground that the Pennsylvania Workers' Compensation Act ("PWCA") provides the exclusive remedy for Plaintiff. (*See* ECF No. 9-1.) WireCo asserts that tort claims arising out of disputes concerning the handling of a PWCA claim are precluded by the PWCA. (*Id.*) Accordingly, it argues that the Court does not have subject matter jurisdiction, as the sole forum for hearing Plaintiff's dispute is the PWCA administrative tribunal. (*Id.*)

### B.    Procedural History

On April 14, 2025, Plaintiff filed a Praecipe to Issue Writ of Summons in the Court of Common Pleas of Philadelphia County, Pennsylvania. On August 4, 2025, Plaintiff filed the

2

Complaint in the same court. On August 22, 2025, WireCo timely removed the case to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C §§ 1441 and 1446 on the grounds of proper diversity jurisdiction under 28 U.S.C § 1332(a). (*See* ECF No. 1.) On September 8, 2025, the parties stipulated to dismiss Count II of the Complaint. (*See* ECF No. 8.) On September 11, 2025, WireCo filed this Motion. (ECF No. 9-1.)

## II.    LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678 (citation omitted). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Applying the principles of *Iqbal* and *Twombly*, the Third Circuit has articulated a three-part analysis to determine whether a complaint will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This three-prong inquiry involves the following: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III.    DISCUSSION

WireCo argues that the Court does not have subject matter jurisdiction to adjudicate Count III. (ECF No. 9-1 at 10.) It argues that the tortious interference claim is a dispute concerning the handling of a PWCA claim, which is precluded by the statute's exclusivity provision. (ECF No. 9-1, at 9 (citing *Kuney v. PMA Ins. Co.*, 578 A.2d 1285, 1287 (Pa. 1990)).) WireCo points to Pennsylvania courts' reluctance to permit common law tort claims for disputes connected to workplace injuries. (ECF No. 9-1, at 8 (citing *Winterberg v. Transp. Ins. Co.*, 72 F.3d 318, 322 (3d. Cir. 1995) (collecting cases)).) Additionally, it argues that the preclusive effect of the PWCA extends to the type of intentional conduct alleged and therefore covers Plaintiff's claim. (*Id.* at 9 (citing *Alston v. St. Paul Ins. Cos.*, 612 A.2d 421, 424 (Pa. 1992)).)

In opposition, Plaintiff argues that the PWCA's preclusive effect does not extend so far as to preclude the present suit. (ECF No. 10-1 at 5.) Plaintiff asserts that the PWCA does not apply to claims concerning injuries and damages that occur after a period of employment. (*Id.*) As Plaintiff's injury from WireCo's alleged tortious interference with his workers' compensation claim is "separate and distinct" from the laceration to his finger, he argues that the PWCA's exclusivity provision does not apply. (*Id.* at 5–6 (citing *Taras v. Wasau Ins. Cos.*, 602 A.2d 882, 887–88 (Pa. Super. Ct. 1992)).) Moreover, Plaintiff argues that the PWCA did not extinguish common law rights generally, and that the proper test for dismissal is just whether Plaintiff has alleged enough facts to support a plausible claim for relief. (*Id.* at 6 (citing *Schweitzer v. Rockwell Int'l*, 586 A.2d 383, 391 (Pa. Super. Ct. 1990)).) Plaintiff argues he has pleaded enough facts for a plausible tortious interference claim, rendering dismissal improper. (*Id.* at 5 (citing *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 211 (Pa. Super. Ct. 2003) for elements of common law tortious interference).)

4

The PWCA provides that "[t]he liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes." 77 P.S. § 481(a). The Pennsylvania Supreme Court has construed this exclusivity provision to establish that the PWCA is the "exclusive forum for resolving disputes regarding the employee's right to compensation and the delay or discontinuance of benefits." *Alston*, 612 A.2d at 424. Accordingly, the PWCA's preclusive effect bars "all disputes over coverage and the payment of benefits, whether they arise from actions taken by the employer, the employer's insurance carrier, or the insurance carrier's employees or agents" from common law recovery. *Id.* The Pennsylvania Supreme Court has continuously reaffirmed that the PWCA extinguished common law rights, contra to Plaintiff's assertion. *See Franczyk v. Home Depot, Inc.*, 292 A.3d 852, 860 (Pa. 2023) ("Restriction of otherwise applicable common-law claims is *precisely* what the Act's exclusivity provision does.") (emphasis added); *Poyser v. Newman*, 522 A.2d 548, 551 (Pa. 1987) (holding that the PWCA does not preserve the right for an employee to sue for an injury caused by an employer's intentional wrongdoing). Accordingly, this Court must determine whether Plaintiff's tortious interference claim comprises a "dispute[] over coverage and the payment of [PWCA] benefits." *Alston*, 612 A.2d at 424. As addressed below, the Court finds that Count III does comprise a precluded dispute. It therefore falls under the purview of the exclusivity provision, making the workers' compensation system the exclusive forum for redress, and so Count III must be dismissed.

### A.    Plaintiff's Claim Is Based on an Alleged Mishandling of His PWCA Claim.

Plaintiff alleges WireCo intentionally interfered with his PWCA claim, resulting in Liberty Mutual revoking its acceptance of his claim. (*See generally* Compl.) This dispute boils down to Plaintiff's allegedly deserved but unpaid PWCA benefits. At its inception, Plaintiff's present suit would not exist but for the initial laceration injury to his finger and resulting PWCA claim. The

alleged wrongful conduct concerns the manner in which the employer acted regarding its duties to provide its carrier with information for Plaintiff's PWCA claim. Thus, the alleged wrongful conduct is directly intertwined with the underlying PWCA claim. This injury—the denial of Plaintiff's claim by Liberty Mutual—is presented and understood as a dispute concerning how the employer handled the PWCA claim. Repeatedly, courts have held that the common law claims concerning the mishandling of compensation claims, intentional or not, are prohibited by the exclusivity provision of the PWCA. *See, e.g.*, *Kuney*, 578 A.2d at 1288. The Court finds no significant grounds to distinguish the current matter from other disputes that have been precluded. Plaintiff argues that a common law action seeking "reinstatement of workers' compensation benefits," is *not* a dispute over worker's compensation benefits. (ECF No. 1-1 at 9.) The Court disagrees.

Plaintiff's argument that the PWCA's preclusive effect does not apply to claims regarding injuries and damages after the period of employment is not substantiated by the case law. Here, Plaintiff relies on *Taras*. (ECF No. 10-1 at 5–6 (citing *Taras v. Wasau Ins. Cos.*, 602 A.2d 882, 887–88 (Pa. Super. Ct. 1992)).) While the court in *Taras* did note common law claims concerning injuries that were "subsequent to and independent of the [PWCA] injury" may proceed, the *Taras* court did not hold that an injury after the period of employment is, in fact, "subsequent to and independent." 602 A.2d at 889. In fact, the *Taras* court stated: "[w]hile the tortious acts of the carriers in those cases may have come after the original injury, they were not independent . . . . Rather, in *Kuney* and *Alston*, the tortious acts . . . were completely intertwined with the original injury, as the[] tortious acts related to the fraudulent denial of benefits for the original injury." *Id.* The analysis did not turn on the temporal aspect, but whether the acts were dependent on the original injury. Here, Plaintiff alleges WireCo fraudulently acted to cause the denial of benefits for

his original injury, similar to the carriers in *Kuney* and *Alston*. For this reason, WireCo's conduct, while subsequent to the original injury, is "completely intertwined with" and therefore dependent upon the original injury.

While Plaintiff cited to case law in his brief, no case law cited by the Plaintiff supports his proposition of such a narrow reading of the PWCA exclusivity provision. Rather, the case law supports the opposite proposition: the PWCA's exclusivity provision has a wide reach and prohibits common law actions for "injur[ies] arising in the course of employment." *Winterberg*, 72 F.3d at 321; *see also id.* at 323 (cautioning against broad exceptions to the PWCA's exclusivity provision); *Shaffer v. Procter & Gamble*, 604 A.2d 289, 293 (Pa. Super. Ct. 1992), *app. denied*, 616 A.2d 986 (Pa. 1992) (holding a common law tort claim concerning an employer's "vindictive, malicious, and persecutory treatment" of an injured employee was barred because while "appalling, it [was] nevertheless job related."). There is no caveat where the PWCA exclusivity provision no longer applies if the injured party is no longer employed; the analysis turns on whether the conduct is intertwined with the original workplace injury. Accordingly, the PWCA exclusivity provision will be applied in the full scope that Pennsylvania precedents require.

### B.    Plaintiff's Injury Does Not Fall Under Any Exception to the PWCA's Exclusivity Provision.

The Pennsylvania Supreme Court has held that certain types of common law actions are not barred by the PWCA's exclusivity provision if the plaintiff can "categorically divorc[e] her claim from the injury upon which it is predicated." *Franczyk*, 292 A.3d at 861 (citing *Martin v. Lancaster Battery Co.*, 606 A.2d 444, 448 (Pa. 1992)). This carveout does not reach conduct that comprises just "egregious and flagrant misconduct of the employer," but requires more and must be read sparingly. *Winterberg*, 72 F.3d at 322–23 (noting a loose reading of the *Martin* carveout "runs the risk of dismantlement" of the PWCA).

Categorically divorced claims concern injuries caused by a defendant's conduct that "go[] beyond the bargain struck by [the PWCA]."[2] *Martin*, 606 A.2d at 447. Plaintiff's claim alleging that his employer made an intentionally fraudulent misrepresentation to deny him his PWCA benefits does not meet the *Martin* standard. This exception covers claims concerning conduct that is "intentionally[] deceitful" to a degree beyond mere intentional interference. *See, e.g.*, *id.* at 447– 48 (allowing common law recovery for a fraudulent representation made directly to the injured employee that caused aggravation of a pre-existing workplace injury); *Taras*, 602 A.2d at 887–88 (allowing common law recovery for an insurance carrier's negligence in coordinating medical treatment that caused direct physical harm that exacerbated a prior injury separate from the underlying work-related accident). Plaintiff's injury does not fall under the *Martin* exception as there was no separate pre-existing injury, WireCo's alleged tortious interference was not made directly to Plaintiff, and the conduct did not directly cause the worsening of a separate pre-existing injury.

Another category of exceptions concerns injuries that are outside the scope of the employer-employee relationship, as these injuries are not a cognizable injury under the PWCA. *See* 77 P.S. § 411(1). Plaintiff cites to one such example in *Holland*, where the court allowed a common law tort claim to proceed. (ECF No. 10-1 at 5–6 (citing *Holland v. Hardee's Food Sys., Inc.*, 853 F. Supp. 848 (E.D. Pa. 1994)).) However, the *Holland* court dealt with interference with contractual benefits that are readily distinguishable from the current injury. 853 F. Supp. at 849. In that case, the plaintiff was entitled to disability compensation from her employer based on separate contractual employment benefits. *Id.* The defendant in *Holland* terminated the plaintiff's

---

[2] The bargain referred to is one where the employer assumed liability without fault for a work-related injury in exchange for immunity from potentially larger damage verdicts in a common law action. *See Kuney*, 578 A.2d at 1287–288.

contractual benefits after she filed for workers' compensation. *Id.* Accordingly, the *Holland* court, applying an *Erie* analysis, held that the Pennsylvania Supreme Court would find that the PWCA's exclusivity provision does not apply to interference with contractual benefits separate from the PWCA even if they both cover the same injury. *Id.* at 851. Here, there is no contractual benefit at issue for Count III. Under the tortious interference claim, Plaintiff is seeking redress for allegedly being denied his PWCA benefits. The only benefits at issue are those from the PWCA. Accordingly, *Holland* is distinguishable from the current matter.

Plaintiff also cites to *Schweitzer v. Rockwell Int'l*, 586 A.2d 383 (Pa. Super. Ct. 1990) for support that his claim falls under an exception to the PWCA's exclusivity provision. (ECF No. 10-1 at 5–6.) The *Schweitzer* court dealt with a sexual harassment claim by the plaintiff against her supervisor. 586 A.3d at 385. In *Schweitzer*, the court held that the PWCA did not bar the plaintiff's claim because the alleged harassment was personal in nature and not part of the employment relationship. Here, Plaintiff's injury directly arises from a laceration he suffered at work and his employer's alleged misrepresentation of information necessary for his PWCA claim. The handling of his PWCA claim is within the parties' employment relationship. The alleged injury arises from duties existing because of this relationship. Plaintiff has pleaded no injury outside of this relationship. Accordingly, this case is distinguishable from *Schweitzer*, and Plaintiff's injury is cognizable under the PWCA.

### C.  Remedies Are Available for Plaintiff's Alleged Injury Under the PWCA.

The Court is further persuaded that Plaintiff's claim is barred because the PWCA directly provides remedies for this type of injury. When a plaintiff's claim is "ultimately based upon an injury compensable under [the PWCA], he is limited to the remedies provided within the framework of the act." *Kuney*, 578 A.2d at 1288. In assessing whether a claim comprises a "dispute

9

over coverage and the payment of [PWCA] benefits," *Alston*, 612 A.2d at 424, courts have considered whether a Plaintiff's injury can be remediated under the PWCA. *See, e.g.*, *Taras*, 602 A.2d at 887 (refusing to preclude a claim because the damages sought were not the "type of damages which would flow from [a work-related injury] claim: past due benefits, interest, costs, and fees. If such were the case, then the holdings from *Kuney* and *Alston* would certainty apply to bar such an action, as [the plaintiff] would have ample administrative remedies at their disposal."); *Holland*, 853 F. Supp. at 851 (allowing a common law suit to proceed after noting that the PWCA provides no recourse for the retaliatory actions before the court); *Santiago v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 613 A.2d 1235, 1243 (Pa. Super. Ct. 1992) (noting that the PWCA exclusivity provision applies when the remedy is addressed by provisions in the Act).

Here, Plaintiff requests damages including "reinstatement of workers' compensation benefits," "lost benefits," "attorneys' fees," and "interest." (ECF No. 1-1 at 9–10.) These are the exact types of damages normally sought for disputes over coverage and payment of PWCA claims. *See Kuney*, 578 A.2d at 1287 (noting that a wrongful delay of compensation benefits is "clearly a matter pertaining to a workers' compensation claim . . . [and the PWCA] has specific remedies for such a grievance"); *see also Taras*, 602 A.2d at 887 (noting remediable damages include "past due benefits, interest, costs, and fees"). The analysis does not change because Plaintiff seeks emotional distress or punitive damages, as these flow from the original injury in this case, and are also compensable under the PWCA. *See, e.g.*, *Shaffer*, 604 A.2d at 293 (precluding a common law action for emotional distress arising from the handling of the compensation claim). Plaintiff's alleged injuries could be compensated by the ambit of the PWCA remedies such as 77 P.S. §§ 717.1 and 991. Accordingly, the exclusivity provision covers the current dispute, rendering the Court without subject matter jurisdiction.

IV.    **CONCLUSION**

For the foregoing reasons, the Court grants WireCo's Motion to Dismiss Count III of the Complaint. As no amendment can remedy Count III, it is dismissed with prejudice. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**